IN THE CIRCUIT COURT OF MARYLAND FOR CHARLES COUNTY

| | |
|---|---|
| SIR LEANDER E. GAMBLE <br> 10025 PenJack Place <br> Waldorf, MD 20603 <br><br> Plaintiff <br><br> vs. <br><br> New Penn Financial, LLC <br> d/b/a Shellpoint Mortgage Servicing <br> P.O. Box 10826 <br> Greenville, S.C. 29603 <br><br> Defendant | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Case No. C-08-CV-18-044 <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

*********************************************************************

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**COMES NOW**, Sir Leander Gamble, the Plaintiff, by and through his undersigned attorneys, Reuben B. Collins, II and R.B. Collins Law, LLC, and files this complaint to recover damages against the Defendants, New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and further sues the Defendants for compensatory and punitive damages.

### JURISDICTION AND VENUE

1. This court has jurisdiction over this action, the Plaintiff, Sir Leander Gamble, claims damages in excess of $300,000.00 for violation of the Fair Debt Collections Practices Act, Maryland Consumer Debt Collection Act, Maryland Consumer Protection Act and for Intentional Infliction of Emotional Distress.

2. Venue is proper as the occurrences upon which this complaint is based happened in the State of Maryland at Charles County.

### PARTIES

3. Plaintiff, Sir Leander Gamble, is a resident of Charles County, Maryland. Plaintiff is a mortgage holder (#0555842169) with the Defendant.

1

4. Defendant, New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, is an active limited liability company in the state of Maryland.

## FACTS COMMON TO ALL COUNTS

5. Beginning on or around November 6, 2016 and beyond, the Defendants, Shellpoint Mortgaging began contacting the plaintiff repeatedly every month by phone or mail at a rate of approximately 10-15 times per month. Plaintiff cannot verify the exact number of calls at this time however a more accurate accounting will be made available during the course of discovery in this matter.

6. That Shellpoint/Defendant's calls would start as early as the 1st of the month to purportedly collect that current month's mortgage.

7. Plaintiff has repeatedly informed Shellpoint representatives that it is not necessary to call him until the end of the month or he will be making what will amount to being two payments per month.

8. Plaintiff receives a disability check and he pays his mortgage upon receipt of that check. Although his payment may have been technically behind he was never in default or in arrears in his payments.

9. When the Plaintiff has answered phone calls from the Defendant on the 1st of the month he has pleaded with Shellpoint not to call him that early in the month.

10. The Plaintiff has told Shellpoint representatives that he had paid them for example on the 28th of the previous month.

11. Plaintiff has asked each representative whether they are calling about the previous month or the current month and the reply is that they are calling on the current month.

12. Representatives for the Defendant asked whether the Plaintiff is living in the home and whether it is his intention to keep the home.

13. The general nature of the calls were not as a courteous service provider but in the context of being an harassing debt collector.

14. The calls occur at an estimated frequency of every two to three days and on some days the Plaintiff had received two calls from the Defendant.

15. The communications with the Plaintiff occurred at unusual hours and with such frequency that could only reasonably be expected to be harassment or abuse of the Plaintiff.

16. The Plaintiff on every occasion has assured the Defendant that it is not necessary to call him regarding his mortgage payments particularly because he was not late in making his monthly payments nor was he in arrears.

17. On some occasions the representatives for the Defendant would ask whether it is a good time to talk and if the Plaintiff replied no the caller became indignant and continued to harass the Plaintiff.

18. The most recent example of the unnecessary calling occurred on March 21, 2018.

19. As a result of the continued harassment the Plaintiff was forced to seek medical attention in the form of mental counseling.

## COUNT ONE
## FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

20. The Plaintiff restates and realleges herein each and every allegation as contained in the preceding paragraphs as if as fully and completely set forth herein.

21. The Plaintiff was the object of unwarranted collection activity arising from his mortgage debt.

22. Shell point was the debt collector that violated the terms of the FDCPA.

23. Shell point engaged in collection tactics that were prohibited by the FDCPA.

WHEREFORE, Plaintiff prays the Court order:
    a. The Defendants pay to Plaintiff damages which totals $100,000.00.
    b. The Defendants pay to Plaintiff costs and reasonable attorneys fees.

## COUNT TWO
## MARYLAND CONSUMER DEBT COLLECTION ACT (MCDCA)

24. The Plaintiff restates and realleges herein each and every allegation as contained in the preceding paragraphs as if as fully and completely set forth herein.

25. The Defendant as a debtholder threatened Plaintiff and Shellpoint willfully and with little regard for the truth did proceed to contact the Plaintiff regarding mortgage debt even though he was current or at the very least not in arrears on his payments.

WHEREFORE, Plaintiff additionally prays this Court:

a. To award compensatory damages against Defendants in the amount of $100,000.

b. To award reasonable attorney's fees and costs of this action.

c. To award such other further relief as this Court deems just and proper.

## COUNT THREE
## MARYLAND CONSUMER PROTECTION ACT §14-202

26. The Plaintiff restates and realleges herein each and every allegation as contained in the preceding paragraphs as if as fully and completely set forth herein.

27. Shellpoint regularly made false representations to the Defendant regarding the need for him to pay his mortgage.

28. Shellpoint knew that the Plaintiff was current in making his mortgage payments and was also aware of the general pattern of when he actually made his payments.

29. Shellpoint made false representations to the Plaintiff in an effort to defraud the Plaintiff.

30. The Plaintiff relied on this false representation by contacting credit bureaus to ensure that his credit was not being sabotaged by the Defendant.

31. Defendant suffered compensable damages as a result of Defendant's tactics and was forced to seek counseling to address anxiety associated with the constant harassment.

WHEREFORE, Plaintiff additionally prays this Court:

a. To award compensatory damages against Defendants in the amount of of $50,000.

b. To award reasonable attorney's fees and costs of this action.

c. To award such other further relief as this Court deems just and proper.

## COUNT FOUR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

32. The Plaintiff restates and realleges herein each and every allegation as contained in the preceding paragraphs as if as fully and completely set forth herein.

33. During the time that the Plaintiff received the unwarranted contacts, he was humiliated, harassed and forced to respond to a series of bully tactic phone calls.

34. The conduct was perpetuated by the agents, servants and employees of Defendant and within the scope of their employment. Defendant is responsible for all of the acts committed by its agents within the scope of their employment.

35. Defendant's conduct was intentional, reckless, and in deliberate disregard of a high degree of probability that emotional distress would result to the Plaintiff.

36. The aforesaid conduct by Defendant's agents was extreme and outrageous and beyond the bounds of decency in society.

37. The conduct of Defendant's agents was malicious, willful and intentional.

38. As a result of the aforesaid conduct and actions, the Plaintiff has suffered and will continue to suffer, severe and extreme emotional distress.

WHEREFORE, prays that the Court order:

a. The Defendants pay judgment to the Plaintiff in the amount of $50,000 in compensatory damages.

b. The Defendants pay $50,000 in punitive damages

c. The Defendants pay to Plaintiff reasonable attorney's fees and costs.

d. The Defendants pay any further relief that is just and equitable.

Reuben B. Collins, II
R.B. Collins Law, LLC
3725 Leonardtown Road, Suite 214
Waldorf, Maryland 20601
www.dcmdlawyers.com

## MARYLAND RULE 20-201 CERTIFICATE OF SERVICE

I HEREBY CERTIFY that pursuant to Maryland Rule 20-201, this submission does not contain any restricted information or, if it does contain restricted information, a redacted submission would have been filed contemporaneously pursuant to subsection (f)(2) of this rule and that on this 13th day April, 2018 a copy of the foregoing was delivered via first class and electronic mail to the following:

Paul J. Moran
Stern & Eisenberg
9920 Franklin Square Drive, Suite 100
Baltimore, Maryland 21236

Reuben Collins